**George TURLEY, Plaintiff–Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Defendant–Appellant.**

No. 90–3079.

United States Court of Appeals,

Tenth Circuit.

Sept. 4, 1991.

Jeffrey L. Lauersdorf (James L. Sanders, Wallace, Saunders, Austin, Brown & Enochs, Chartered, with him, on the brief), Overland Park, Kan., for defendant-appellant.

Gordon M. Rock, Jr., Grimshaw & Rock, Chartered, Olathe, Kan., for plaintiff-appellee.

Before EBEL and McWILLIAMS, Circuit Judges, and ALLEY, District Judge.*

McWILLIAMS, Circuit Judge.

An insured brought suit against his insurer for damage to his automobile which allegedly had been stolen and stripped. Upon recovery of the vehicle, the parties agreed that it was damaged in the amount of $9,756.42. However, the insurer denied policy coverage. A jury trial resulted in a verdict for the insured against his insurer in the stipulated amount. The insurer appeals.

On February 27, 1986, James Brigman and his daughter, Michelle Brigman, leased a 1984 Chevrolet Corvette from one George Turley. The terms of the lease were that James Brigman would make monthly payments to Turley in the amount of $350 and that he (Brigman) would be responsible for maintenance and automobile insurance.

On February 28, 1986, James Brigman made application for automobile insurance on the Corvette with one Vernon Killian, an agent for State Farm Mutual Automobile Insurance Company ("State Farm"), with whom James Brigman had dealt for several years. In the application James Brigman listed his daughter, Michelle, as the primary driver. State Farm issued a policy of insurance to James and Michelle for coverage on the Corvette on February 28, 1986, effective at 1:00 p.m. Later that same day, George Turley was identified as the owner of the Corvette and was added as an additional insured. The policy issued by State Farm included comprehensive coverage for theft.

On March 3, 1986, Michelle Brigman contacted the Kansas City, Missouri Police Department and reported that the Corvette had been stolen on that date from the east side of the Bannister Shopping Mall sometime between 11:15 a.m. and 12:15 p.m. while she was shopping. As a matter of fact, however, the Kansas City, Missouri Police Department had recovered the Corvette on March 1, 1986, at about 3:30 p.m.[1], one day *after* the effective date of the insurance policy and two days *before* the date given by Michelle Brigman as the date of the theft.[2]

Subsequent to the reported theft of the vehicle by Michelle Brigman to the police, the loss was reported to State Farm. The

---

* Honorable Wayne E. Alley, U.S. District Judge for the Western District of Oklahoma, sitting by designation.

1. The police discovered Turley's Corvette, partially stripped and damaged, in response to a telephone call regarding an abandoned car. The vehicle was found "in the woods" about "two miles" from the Bannister Mall.

2. In a deposition, Michelle Brigman later stated that the Corvette was actually stolen from an outside parking area adjacent to her mother's apartment complex in the early morning of March 1, 1986. She further testified in her deposition that she immediately attempted to contact her father, but that he was "out driving one of his trucks ... on his way [from Kansas] to California or on his way back." Being "nervous and upset," she stated that she notified the police on March 3, 1986, and gave them an incorrect report of theft as such related to the date, time and place of the theft.

claims office of State Farm then contacted the named insureds, James and Michelle Brigman, and requested further information concerning the loss of the vehicle. On April 17, 1986, James and Michelle Brigman submitted claim documents to State Farm which included two affidavits, one from each of them, wherein they stated that the theft occurred on March 3, 1986, at the Bannister Shopping Mall.[3]

State Farm denied Turley's claim that he, as the owner of the Corvette, be paid for the loss sustained by him. The reason given Turley by State Farm for its denial of coverage was as follows:

"[D]ue to the material misrepresentation made to [State Farm] and the falsified Kansas City, Missouri auto theft report, any and all claims for the theft or damage of the 1984 Corvette are hereby denied."

It was in this general setting that Turley (not James or Michelle Brigman), a citizen of Kansas, brought the present action against State Farm, a company incorporated under the laws of Illinois, in the district court for Wyandotte County, Kansas. State Farm thereafter removed the case to the United States District Court for the District of Kansas on the grounds of diversity, pursuant to 28 U.S.C. § 1441.

In the complaint, Turley alleged that he was the owner of the Corvette which State Farm had insured and that he was an additional insured in the policy which State Farm issued. He went on to allege that the vehicle was stolen on March 3, 1986, and not recovered by the Kansas City, Missouri Police Department until April 28, 1986,[4] with parts of the vehicle having been stripped and damaged. He then alleged that he had requested State Farm to pay for the property damage done to his vehicle and that State Farm had refused payment.

Turley sought judgment in an amount in excess of $10,000.00.

By answer, State Farm denied liability, alleging that Turley was barred and estopped from any recovery because of his failure to cooperate with State Farm by materially misrepresenting facts relating to the "cause, origin and extent of the subject loss." State Farm also alleged that Turley was not entitled to recover any money because of "a breach of the policy conditions precedent to coverage." As a further defense, State Farm alleged that "no loss occurred which is covered under the terms and conditions of the policy." As a final defense, State Farm alleged that Turley should be denied recovery based on "the illegality of the actions of the named insureds."

After discovery, State Farm filed a motion for summary judgment with a supporting memorandum. It was State Farm's position that although it had no communications whatsoever with Turley, he was nonetheless bound by the material misstatements made to it by James and Michelle Brigman and that he, Turley, was barred from any recovery on the policy because of the Brigmans' failure to cooperate with State Farm's investigation. Turley filed a memorandum in opposition to State Farm's motion, arguing that under Kansas law any misrepresentations made by the Brigmans to State Farm did not bind him, an "innocent owner" of the stolen vehicle.

The district court denied State Farm's motion for summary judgment.[5] In so doing, the district court agreed with the parties that there was no Kansas law as to whether a failure to cooperate by a named insured could be vicariously attributed to a so-called "innocent" co-insured, and also that outside of Kansas there was a split of authority on that particular matter. How-

---

**3.** In the affidavits submitted to State Farm, James and Michelle both stated that the theft was discovered and reported to the police on "4/3/86" (April 3, 1986). They later testified (Michelle in a deposition and James at trial) that such was a mistake.

**4.** Where this date came from is unknown from the record before us. It is agreed by all that the Corvette was recovered by the Kansas City, Missouri Police Department on March 1, 1986.

**5.** The district judge who ruled on State Farm's motion for summary judgment was a different judge than the one who presided at trial.

ever, the district court felt it did not have to decide that question, at least in a summary judgment setting, since it was of the view that before there could be any imputation of the Brigmans' conduct to Turley, it had to be first determined whether the Brigmans' misstatements were material and detrimental to State Farm and whether such statements were made with an intent to defraud State Farm, all of which presented genuine issues of material fact which could not be resolved on summary judgment. In this connection, the district court noted, *inter alia*, that based on the evidentiary matter before it, any statements submitted by James Brigman to State Farm were based on information given him by his daughter, Michelle, i.e., he had no personal knowledge of any facts surrounding the date, time and location of the alleged theft since he was in California at the time, and that Michelle Brigman, age 19, "had initially provided incorrect information because she was nervous and upset."

■ State Farm's initial argument in this court is that the district court erred in denying its motion for summary judgment and that we should reverse the present judgment in favor of Turley and remand with directions that the district court enter judgment in favor of State Farm. With this we do not agree.

This is not a case where the insured made false statements in his application for insurance. Rather, it is State Farm's position that Michelle Brigman made a false statement to State Farm concerning the date, time and location of the theft of the Corvette, to which James Brigman later subscribed, and that such conduct was not in accord with the policy requirement that the insureds "cooperate" with State Farm in its investigation of any claim of loss under the policy. In connection with this argument, it is State Farm's further position that the misconduct of the Brigmans is vicariously imputed to Turley to the end that he too is barred from any recovery under the terms of the policy.

As indicated, the district court was of the view that it did not have to rule on the imputability issue since the initial question of whether the Brigmans' conduct itself violated the terms of the policy presented issues of fact which could not be resolved on summary judgment. The district court noted that not every incorrect statement given by an insured to his insurer concerning loss would bar recovery under the terms of the policy. Whether the statements of the Brigmans were made with an intent to defraud State Farm, and whether such were material and prejudicial to State Farm's defense in the present proceeding, were enumerated by the district court as issues which should be explored at trial, and not resolved on summary judgment. Under the described circumstances, we are in accord with the district court's denial of State Farm's motion for summary judgment. *See Elliott v. Metropolitan Casualty Ins. Co. of N.Y.*, 250 F.2d 680, 683 (10th Cir.1957), *cert. denied*, 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762 (1958) (applying Kansas law, the court stated that "[w]hen reasonable minds might differ as to the intent of the insured in furnishing false information to the insurer, the question of cooperation should be submitted to the trier of fact"); *American States Ins. Co. v. Ehrlich*, 237 Kan. 449, 701 P.2d 676, 679 (1985) (under Kansas law, the existence of fraud to justify recision of an insurance contract is never presumed and is ordinarily a question of fact); and *Hustead v. Bendix Corp.*, 233 Kan. 870, 666 P.2d 1175, 1176 (1983).

■ Prior to trial, Turley filed a motion *in limine* in which he sought, *inter alia*, to preclude counsel for State Farm from mentioning in either *voir dire* or in his opening statement the fact that both Turley and Brigman had suffered felony convictions within the preceding ten years and that Turley had previously submitted false claims to other insurance companies, including a claim in which he conspired with James Brigman. As we understand it, counsel for State Farm did not have any particular objection to the request that he refrain from mentioning such in *voir dire* and during his opening statement, but he clearly indicated that if during the course

of the trial such evidence became relevant, he intended to seek the admission of this type of evidence. In any event, the district court ordered counsel to refrain from mentioning any prior convictions or "prior bad acts" of either Turley or Brigman in *voir dire* and in opening statement, and the question of whether such might somehow become admissible during the course of the trial was left open. We perceive no error in this limiting order. The better practice would seem to be that evidence of this nature, which may or may not be admitted at trial, should not be alluded to in *voir dire* or during opening statement and should await development of the trial itself.

■ Although State Farm, on appeal, does not challenge the district court's order *in limine*, it does challenge the district court's subsequent denial of its proffer to show prior "bad acts" of Turley and James Brigman. In this general connection, Turley, the named plaintiff, did not himself testify, so counsel was effectively precluded from attacking his credibility by showing his prior felony conviction, or convictions, within the preceding ten years.

However, James Brigman did testify, and on direct examination he admitted to a felony conviction occurring in 1984 for being an accessory to mail fraud against an insurance company. During cross-examination, counsel for State Farm proposed to question James Brigman concerning a spurious insurance claim which he helped Turley make in 1983. In connection with its explanation as to just what this line of inquiry of James Brigman would develop, State Farm indicated that it also intended to call Turley's ex-wife as a witness to testify regarding the 1983 insurance claim arranged by Turley and Brigman, as well as numerous other fraudulent insurance claims which Turley had filed over the years. Objection was made, and after a hearing outside the presence of the jury, the objection was sustained. State Farm argues that this ruling constitutes reversible error.

In view of the district court's ruling that it would not allow evidence of any prior insurance claim made by Turley, State Farm proffered the deposition of Turley's ex-wife given in the court proceeding commenced by Turley in relation to the aforementioned 1983 insurance claim. Although refusing to admit the deposition into evidence, the court accepted it as a proffer. In that deposition, Turley's ex-wife testified that James Brigman and Turley in 1983 conspired to fake a "slip and fall," wherein Turley would claim he suffered a back injury as the result of such "slip and fall" and Brigman would testify that he witnessed Turley's non-existent "slip and fall." In this connection, the ex-wife stated that Turley had multiple health and accident policies, and that he collected on many of these policies for non-existent injuries to the end that he was receiving approximately $4,000 per month in 1983. The ex-wife also testified as to other spurious insurance claims made by Turley, but we are here primarily concerned with the prior "bad act" involving both Turley and Brigman.

We think the district court erred in rejecting State Farm's request that it be allowed to cross-examine James Brigman concerning his conspiring with Turley to stage a fake "slip and fall," as well as in disallowing State Farm the opportunity to call Turley's ex-wife as its witness and eliciting evidence from her concerning the staged accident, or using her deposition in lieu thereof. We think a fair reading of Fed.R.Evid. 404(b) requires the admission of this type of inquiry and evidence. In our view, such was relevant to the issues in the instant case, and though quite possibly prejudicial, at the same time was highly probative. Certainly it bore on the questions of whether James Brigman had an intent to defraud State Farm and whether there was collusion on the part of Turley.[6]

At trial one of State Farm's theories of defense was that the Corvette was actually stolen *before* the effective date of the in-

---

**6.** In its order denying State Farm's motion for summary judgment, the district court noted that State Farm had raised inferences of collusion with intent to fraudulently deceive on the part of James and Michelle Brigman, as well as on the part of Turley. According to the court, such inferences presented material issues for the finder of fact to resolve.

surance policy. In this regard, it was admitted that the Brigmans had the Corvette in their possession since December, 1985, when James Brigman gave it to his daughter as a Christmas present, and that Michelle Brigman was "testing" the vehicle to see if she wanted to keep it. Thereafter, for that entire period of time, from the latter part of December, 1985, until February 28, 1986, there was apparently *no* insurance on the vehicle. Then, on February 28, 1986, one day after Turley leased his Corvette to the Brigmans, insurance was obtained, and the vehicle was reportedly stolen during the early morning hours of the following day, March 1, 1986, according to the testimony of Michelle Brigman in her deposition, as well as the testimony of her mother and her boyfriend at trial. And then, some two days after the theft, Michelle Brigman gave false information to the police and later to State Farm concerning the date, time and location of the alleged theft, all of which, State Farm maintained, was in furtherance of a scheme to make it appear that the vehicle was stolen *after* the effective date of the policy.[7] Counsel suggests that all of this has the "earmarks" of insurance fraud and that evidence of a prior insurance fraud became germane to prove intent, knowledge, and absence of mistake or accident on the part of the Brigmans, and that Turley, under the circumstances, was involved therein. We agree.

Fed.R.Civ.P. 61 provides that any trial error in connection with either the admission or exclusion of evidence is not grounds for disturbing a verdict or judgment unless such admission or exclusion is "inconsistent with substantial justice." Fed.R.Evid. 403 provides that even relevant evidence may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice." Rule 404(b) provides that evidence of other crimes, wrongs or acts is inadmissible to prove the character of a person "in order to show action in conform-

ity therewith," but that such evidence may be admissible for other purposes, such as proof of intent, knowledge or absence of mistake or accident. We think that evidence that James Brigman and Turley conspired in a prior insurance scam was relevant to the Brigmans' intent, knowledge, and absence of mistake or accident in the present proceeding as well as to Turley's involvement in connection therewith, and that the exclusion of such evidence was "inconsistent with substantial justice." Indeed, the excluded evidence was conceivably of devastating proportions.

Our attention has not been drawn to Tenth Circuit cases concerned with prior bad acts in the context of insurance fraud. For cases from other circuits involving prior acts of insurance fraud which were deemed admissible, *see United States v. Radseck*, 718 F.2d 233, 236–37 (7th Cir. 1983), *cert. denied*, 465 U.S. 1029, 104 S.Ct. 1291, 79 L.Ed.2d 693 (1984); *United States v. Wormick*, 709 F.2d 454, 459 (7th Cir. 1983); *United States v. Smith*, 685 F.2d 1293, 1296 (11th Cir.1982); *United States v. Lebovitz*, 669 F.2d 894, 902 (3d Cir.), *cert. denied*, 456 U.S. 929, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982); and *United States v. Fuel*, 583 F.2d 978, 989 (8th Cir.1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979).

In refusing to admit the evidence in question, the district court, relying on *United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir.1985), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986), was of the view that counsel had not sufficiently articulated the "fact of consequence" that would be established in the present proceeding by evidence of the insurance scam between Turley and James Brigman in 1983. We disagree. We think that counsel properly stated the "fact of consequence" he intended to establish by introducing such evidence. We note that in *Kendall* the evidence of prior acts was admitted, and on appeal we affirmed. Fur-

---

**7.** The State Farm claim specialist assigned to investigate the claim in question admitted on cross-examination that after State Farm denied Turley's claim, an individual, imprisoned at the time of trial for a separate offense, was suspect-

ed of stealing Turley's Corvette. However, insofar as our review of the record has revealed, no one was ever prosecuted or convicted for stealing Turley's car.

ther, as we recently indicated in *United States v. Porter*, 881 F.2d 878 (10th Cir. 1989), *cert. denied*, 493 U.S. 944, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989), "the *Kendall* requirements are not indispensable." *Id.* at 884–85 (citing *United States v. Record*, 873 F.2d 1363, 1372–75 (10th Cir.1989)). Be all that as it may, we reject any suggestion by Turley that this matter was not properly before the district court. Certainly Turley knew what State Farm was trying to establish by this line of inquiry, and accordingly, before trial, filed a motion *in limine* to exclude evidence of prior criminal convictions of both Turley and James Brigman and prior bad acts involving either or both.

We believe *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), has present pertinency. In *Huddleston*, the Supreme Court held that a district court need not make a preliminary finding that the government has proved the "other act" by a preponderance of the evidence *before* it submits "similar acts" and other Rule 404(b) evidence to the jury. In support of its holding, the Supreme Court concluded that as concerns Rule 404(b), "Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence." *Id.* at 688–89, 108 S.Ct. at 1500–01. The Supreme Court then went on to state that the "protection" against unfair prejudicial evidence emanates from the following sources: (1) from Rule 404(b) itself which requires that the evidence be offered for a proper purpose; (2) from the relevancy requirement of Rule 402; (3) from the trial court's assessment under Rule 403 that the probative value of the similar acts evidence is not substantially outweighed by its potential for unfair prejudice; and (4) from Rule 105, which provides that, if the evidence be admitted, the district court, on request, should instruct the jury on the limited purpose for which such evidence is received.

In *United States v. Record*, 873 F.2d 1363, 1372–75 (10th Cir.1989), we held that the district court's admission of prior acts was proper under the result and rationale of *Huddleston*. For a review of Tenth Circuit cases bearing on the present case, *see Record*. In *Record* we quoted the observation made in *Huddleston* that the real thrust of Rule 404(b) was that evidence of other acts *was* admissible and that Congress in enacting 404(b) was "not nearly so concerned with the prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence."

In sum, evidence that Turley and James Brigman engaged in an insurance scam in 1983 should have been admitted by the trial court in the present proceeding under Rule 404(b). This evidence bore on one of State Farm's theories of defense, i.e., that there was insurance fraud and that the Corvette was actually stolen before the effective date of the insurance policy. In addition, such bore on James Brigman's knowledge, intent, and absence of accident or mistake in his dealings with State Farm, and on Turley's knowledge of the same. The potential prejudice of such evidence did not "substantially outweigh" its highly probative value.[8]

Although our determination that the district court erred in excluding inquiry of James Brigman on cross-examination concerning his conspiring with Turley in 1983 to submit a spurious insurance claim and that it further erred in denying State Farm the opportunity to establish through the testimony of Turley's ex-wife that such was in fact the case, requires a new trial, we elect to comment briefly on State Farm's third and final argument in this court. That argument concerns the instructions given by the district court to the

---

**8.** The proffered evidence showed an act quite "similar" in nature to the acts relied on by State Farm in defending Turley's claim. No contention was made in the district court or here that the time interval between the prior acts and the present acts barred admission. Although we are here primarily concerned with the conspir- acy between Turley and James Brigman in 1983, counsel suggests that there are other acts of insurance fraud by Turley that should have been presented to the jury. Whether such be the case, should be first determined by the district court on remand.

jury. Specifically, State Farm contends that the district court erred in giving, over objection, Instructions numbered 12 and 14 and in refusing an instruction tendered by State Farm.

■ Instruction number 12 instructed the jury on the essential elements of Turley's claim, and failed to mention, as State Farm argues it should have mentioned, that one essential element was that Turley, before he could recover, was required to show that he complied with all of the policy's "conditions precedent." The specific "condition precedent" State Farm was concerned with at trial was the insureds' duty to cooperate with State Farm's investigation of any claim made under the policy. In this connection, we find no evidence that Turley, as opposed to the Brigmans, failed to comply with any of the "conditions precedent" of the insurance policy, including the duty to cooperate, unless the Brigmans' misconduct be imputed to Turley. Be that as it may, it would appear that this particular matter was covered, though inadequately, by Instruction number 14.

Instruction number 14 reads as follows:

Under the terms of the insurance contract in question, the insureds have a duty to cooperate fully with the defendant in the investigation of their claims.

A failure to cooperate may be evidenced by the lack of truthfulness on the part of an insured in the investigation and/or reporting of a claim. Insurance coverage under an insurance contract may be forfeited by an insured's failure to cooperate. Insurance coverage under an insurance contract may be forfeited by the insured's failure to cooperate if such failure causes substantial prejudice to the defendant's ability to defend itself.

If you find the plaintiff, George Turley, failed to cooperate by having knowledge of, and assenting to, other insureds' failure to cooperate, and that the lack of cooperation caused substantial prejudice to the defendant's ability to defend itself, you must find for the defendant, State Farm Mutual Automobile Insurance Company.

State Farm objected to Instruction number 14, arguing, *inter alia*, that it failed to instruct the jury that Turley was bound by the misstatements of the Brigmans. In this regard, the instruction, as indicated, did advise the jury that if Turley had knowledge of and assented to the Brigmans' "failure to cooperate," and such caused "substantial prejudice" to State Farm's ability to defend itself, they must find for State Farm. However, we find no evidence in the record before us that Turley knew and assented to the Brigmans' false statements to State Farm. Be that as it may, it would appear to us that, on remand, the jury is going to have to be instructed that as a matter of law the Brigmans' misconduct either is, or is not, attributable to Turley.

In this court, State Farm also argues that it was error for the district court to instruct the jury that misconduct, be it by the Brigmans or Turley, had to result in "substantial prejudice" to State Farm's ability to defend itself before it could bar recovery. In this connection, it is State Farm's position that although "substantial prejudice" is required where a third party is suing the insured, such is not the case where the insured, as a first party, is suing his insurer. We note that in State Farm's tendered instruction, which was rejected, State Farm itself used the phrase "substantial prejudice." Further, as far as we can tell, this particular argument was never made in the district court. The argument may now be made on remand.

Judgment reversed.