**Robert W. LONG and Geraldine Long, Plaintiffs-Appellants,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee.**

No. 80–1988.

United States Court of Appeals, Tenth Circuit.

Argued Feb. 2, 1982.

Decided Feb. 12, 1982.

Rehearing Denied March 12, 1982.

Jim Grennan of Grennan, Faulkner & Koenig, Oklahoma City, Okl., for plaintiffs-appellants.

Ronald L. Day of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., for defendant-appellee.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Robert and Geraldine Long appeal from summary judgment granted in favor of the Insurance Company of North America (insurer) in a diversity action the Longs brought to compel the insurer to pay for losses the Longs suffered because of a fire at their home. The trial court upheld the insurer's affirmative defense that the Longs had knowingly and intentionally misrepresented a material fact concerning their loss, thereby violating the "false swearing" provision of the fire insurance policy and voiding the policy. On appeal the Longs' principal contention is that the materiality of their misrepresentation is a question of fact that precludes summary judgment.

Fire broke out at the residence on December 22, 1978, one day after the Longs had left Oklahoma City to visit relatives in eastern states. The Longs returned on December 26 and promptly notified their insurance agent of the loss. Both the fire department and an insurance investigator attempted to determine the cause of the fire which all admit was the product of arson. The Longs' theory was that the fire might have been set by a burglar who broke into their home in their absence. The insurance company's principal suspects were the Longs, because on December 30 the city fire department had received an anonymous call on its "arson hotline" advising that the caller had seen people at the Longs' home removing furniture the day before the fire and again, fifteen minutes before the fire, moving old furniture into the house. The caller said that Mrs. Long's brother was one of the people in the house fifteen minutes before the fire broke out. The fire department received a second anonymous call on April 11, 1979, advising that shortly before the fire the Longs had rented a storage area and moved several things into storage which they removed following the fire after renting a residence. The insurer's investigator learned that a storage area had been rented on December 20, 1978, in the name of Deboraha Ann Coates, Mrs. Long's eleven-year-old daughter, and then vacated on January 5, 1979.

On May 17, 1979, the insurance company asked the Longs to answer questions, under oath, at the office of an attorney representing the insurance company. Mrs. Long gave the following sworn testimony:

"Q. Did you all own any furniture or any appliances, say, TV sets, anything that you were keeping somewhere else, like at your parents' house?

A. We had a color TV in the living room, it was—

Q. I'm talking about did you have any stuff that maybe you had gotten at any auction or just your stuff,

whether it was furniture, TV's, toasters or what, that you did not keep at that house?

A. No. We had enough garage space out there, I mean if you see the garage and the junk that's in it, they would probably fine us for having all that junk in it right now.

. . . . .

Q. Did you all ever make it a practice if you bought extra stuff in an auction that you didn't have room for, to keep it in storage somewhere, rent storage space?

A. No. ...

. . . . .

Q. What I'm talking about is you told me that you all went to flea markets and garage sales and auctions and would buy stuff whenever you got a good deal. I was wondering if you ever had any other place that you would· keep stuff besides at your house?

A. Why should we? Like I said, we had plenty of room there. No."

R. I, 90–91.

Mr. Long gave the following sworn testimony:

"Q. Did you ever keep any of your stuff, any of your inventory for your business[,] for your yard sales?

A. We had about sold out. It was in the garage and people did go through that. It was in· the big part of my garage. I have a shed behind my garage built on.

Q. Do you have any of that stuff stored anywhere else?

A. No. Wasn't no room in the house.

. . . . .

Q. Did you store anything else [besides guns at a pawn shop]?

A. No, just that...."

R. I, 96–98.

By letter dated May 24, 1979, the insurer informed the Longs that it was denying their claim for loss because it believed the fire had been set through the "design and/or procurement" of the Longs, and the Longs had violated the false swearing provision of the insurance policy and "purposefully concealed and/or misrepresented" material facts concerning the loss. The Longs brought the instant suit in July. On August 21, 1979, the parties took back-to-back depositions: in the presence of the Longs, their counsel deposed the insurance investigator; and counsel for the insurance company then deposed the Longs. During deposition of the insurance investigator, the Longs learned that the insurance company knew about the storage locker. Then Mrs. Long was deposed and, as pertinent, testified as follows:

"Q. You were sitting here today when testimony came out about this storage rental up at Colonial, were you not?

A. Yes.

Q. Did you hear the testimony on that?

A. Yes, I did.

Q. Did you rent the space there?

A. I did.

Q. At that time?

A. Yes, I did.

Q. Do you recall me asking you questions in your sworn statement, if you had ever stored any stuff?

A. I refuse to answer that on the ground that it might incriminate me."

R. II, 15.

At Mr. Long's deposition, as pertinent, he testified as follows:

"Q. Okay. You heard your wife testify here earlier this afternoon that at your direction, she went up to the Colonial Self Storage at Britton Road and Broadway Extension in Oklahoma City.

A. Wilshire Road.

Q. Wilshire. At your direction, to rent a space.

A. I did.

Q. Did you in fact tell her to do that?

A. Yes, I did.

. . . . .

Q. What was the reason for renting the storage locker?

A. I refuse to answer on the grounds it might incriminate me.

Q. Did you put anything in that storage locker?

A. I refuse to answer on the grounds it might incriminate me."

R. III, 79–81.

At the same deposition Mr. Long was asked about his prior sworn denials to whether he ever kept any valuable property away from the house. He testified that he was under the impression the prior question referred only to household properties. Mr. Long and his attorney both stated that Mr. Long was invoking the Fifth Amendment at the attorney's direction.

The trial court granted the insurer's motion to compel answers to its questions, stating that it would dismiss the Longs' suit if they failed to give answers. The Longs were then deposed a second time. Mrs. Long testified that she rented the locker at her husband's request, did not know why he wanted it, was only there once, did not place anything in the storage locker, and did not know what her husband had placed in it. Mr. Long testified that he asked his wife to rent the storage locker so that he could store $400–$500 worth of tools, CB radios, and miscellaneous materials that he intended to purchase later the same day and resell at a flea market.

The insurer moved for summary judgment, arguing that the policy should be held void because the insureds violated the "false swearing" provision mandated by Okla.Stat.Ann. tit. 36, § 4803:

"This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepre-

sented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

The insurer contended that the Longs' willful concealment of their rental of a storage area two days before the fire at their home was a "material fact" that concerned the subject of the fire insurance policy. The Longs argued that they made no misstatement since they were not directly asked whether they had rented a storage locker, but that if they did make a misrepresentation, the materiality thereof was a question of fact to be decided by the jury rather than by summary judgment.[1]

The Supreme Court has summarized the purpose of the "false swearing" provision:

"The object of the provisions in the policies of insurance, requiring the assured to submit himself to an examination under oath, to be reduced to writing, was to enable the Company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to its rights, to enable it to decide upon its obligations, and to protect it against false claims. And every interrogatory that was relevant and pertinent in such an examination was material, in the sense that a true answer to it was of the substance of the obligation of the assured."

*Claflin v. Commonwealth Ins. Co.*, 110 U.S. 81, 94, 3 S.Ct. 507, 515, 28 L.Ed. 76, 82 (1884).

When the party moving for summary judgment shows there is no genuine issue as to any material fact and it is entitled to a judgment as a matter of law, the opposing

---

1. On appeal the Longs make an additional argument: They made no misrepresentation since they believed the questions were directed only to storage of their household goods, whereas their storage was of goods purchased for resale at a flea market. If the subject of the questions had been ambiguous, the trial court would have had to resolve the issue in favor of the Longs since they are the party against whom summary judgment was sought. *See,*

e.g., *Webb v. Allstate Life Ins. Co.*, 536 F.2d 336, 340 (10th Cir. 1976). However, both Mr. and Mrs. Long had been specifically asked whether they ever stored elsewhere "stuff" purchased for their business or their yard sales. Further, since this argument was not made to the trial court we need not resolve it on appeal. *See, e.g., Byrd v. Wolff*, 490 F.2d 1277, 1278 (8th Cir. 1974); *Adkins v. E.I. du Pont de Nemours & Co.*, 181 F.2d 641, 642 (10th Cir. 1950).

party cannot rest on mere allegations or denials but must respond by affidavits or otherwise to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). As to the Longs' contention that they made no misrepresentation since they had not been asked about rental of a specific storage locker, we agree with the trial court that no *genuine* issue of fact exists: their denials would certainly encompass any rental of a storage locker two days before the fire.

 The Longs' other contention is that materiality of a misrepresentation is a question of fact that a jury should decide. However, materiality is a mixed question of law and fact that can be decided as a matter of law if reasonable minds could not differ on the question. *E.g., TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976); *Gould v. American-Hawaiian S.S. Co.*, 535 F.2d 761, 771 (3d Cir. 1976); *Johns Hopkins Univ. v. Hutton*, 422 F.2d 1124, 1129 (4th Cir. 1970), cert. denied, 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974). This rule has been applied to insureds' misrepresentations to insurance companies. *E.g., Duke v. Hartford Fire Ins. Co.*, 617 F.2d 509 (8th Cir. 1980) (upholding trial court's directed verdict for insurance company); *Tenore v. American and Foreign Ins. Co.*, 256 F.2d 791 (7th Cir. 1958) (overturning trial court's verdict for insureds). Regarding allegations of false swearing, a misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented. *See* Restatement (Second) of Torts § 538(2)(a) (1977); *cf. Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 604 (5th Cir. 1974) (applying that definition to proxy statement misrepresentations); *Chaachou v. American Central Ins. Co.*, 241 F.2d 889, 893 (5th Cir. 1957) (misrepresentation to insurer material if it would "cause the insurer to do other than that which would have been done had the truth been told").

 In the instant case, when the Longs gave their sworn statements they knew that arson caused the fire at their home and

that the insurance company was carefully investigating their claim. In this context their misrepresentation that they had never stored belongings elsewhere, when they had rented a storage locker just two days before the fire occurred, is material as a matter of law. Reasonable minds could not differ as to whether an insurance company investigating the claim would attach importance to the misrepresentation. Therefore, the trial court's grant of summary judgment to the insurance company is AFFIRMED.