UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

CHARLES WAGNON and LORALEE
WAGNON, husband and wife,

        Plaintiffs-Appellees-
        Cross-Appellants,

v.

STATE FARM FIRE AND
CASUALTY COMPANY,

        Defendant-Appellant-
        Cross-Appellee.

Nos. 96-5012, 96-5013, 96-5213

---

ORDER

Filed June 19, 1998

---

Before TACHA, EBEL, and BRISCOE, Circuit Judges.

---

Appellant-cross-appellee's motion to publish the order and judgment filed on April 24, 1998, is granted. The published opinion is attached to this order.

Entered for the Court

Patrick Fisher
Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 24 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

CHARLES WAGNON and LORALEE
WAGNON, husband and wife,

      Plaintiffs-Appellees-
      Cross-Appellants,

v.

STATE FARM FIRE AND
CASUALTY COMPANY,

      Defendant-Appellant-
      Cross-Appellee.

Nos. 96-5012, 96-5013, 96-5213

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 94-C-972-B)**

---

Submitted on the briefs:

Steven L. Sessinghaus, Tulsa, Oklahoma, for Plaintiffs-Appellees-Cross-Appellants.

Neal E. Stauffer, Kent B. Rainey, Paul B. Harmon, Valery Bedingfield-Christmas, of Stauffer, Rainey, Gudgel & Harmon, P.C., Tulsa, Oklahoma, for Defendant-Appellant-Cross-Appellee.

---

Before **TACHA**, **EBEL**, and **BRISCOE**, Circuit Judges.

---

**EBEL**, Circuit Judge.

In appeal No. 96-5012, defendant-appellant State Farm Fire & Casualty Company (State Farm) appeals the district court's judgment in favor of plaintiffs-appellees Charles and Loralee Wagnon on their breach of contract claim. State Farm also appeals the district court's denial of its motion for summary judgment based on the statute of limitations. In appeal No. 96-5013, plaintiffs-cross-appellants Charles and Loralee Wagnon appeal the district court's limitation of their recovery to actual cash value instead of the replacement cost of the stolen items. In appeal No. 96-5213, defendant-appellant State Farm appeals the award of costs and attorneys fees to plaintiffs. Because we conclude that Mr. Wagnon's misrepresentations to State Farm were material and intentional as a matter of law, voiding the insurance policy, we reverse the district court's judgment in favor of plaintiffs and the resulting award of fees and costs.[1]

## I. Background

On January 3, 1992, State Farm issued a one-year renters' insurance policy to plaintiffs, insuring their property against fire and other perils, including theft.

_____

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cases are therefore ordered submitted without oral argument.

The policy contained a provision voiding coverage if any insured "intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss." Appellant's App. II, doc. 22, p. 379.

On April 4, 1992, plaintiffs' home was burglarized. On April 10, 1992, they filed a proof of loss with State Farm, claiming the loss of personal property in the amount of $21,176.84, including the loss of tools worth approximately $4,300. In the proof of loss, Mr. Wagnon made a claim for eighty-five tools or sets of tools (totaling 527 individual pieces), and indicated he had acquired sixty of these tools or sets four years earlier. Mr. Wagnon did not submit any receipts, canceled checks, or pictures to support his claim of ownership.

During State Farm's initial interview of Mr. Wagnon on April 20, 1992, he again stated that he acquired the tools approximately four years earlier, and that a "lot of em my dad and I had when I was living at home and ah I just collect em, you know, like that and then on I just kept gradually getting um." Id., doc. 25, at 391. Later, when asked whether his father bought the tools for him, Mr. Wagnon replied "Yes, ah he acquired them you know, and he had so many of them I just kind of picked and choose and he just let me take whatever . . . ." Id. at 396.

During Mr. Wagnon's first examination under oath on June 8, 1992, State Farm asked whether Mr. Wagnon purchased a ten-drawer tool chest, to which he replied, "No, my dad had it, my dad had had it, and he just gave it to me." Id.,

doc. 28, at 458. State Farm then asked him whether he acquired all of the tools listed on the proof of loss from his father, to which Mr. Wagnon replied, "Not all of them; I bought a few of them here and there. I can't remember exactly which ones I bought and which ones he gave me though." Id. at 460. Mr. Wagnon went on to identify more than sixty-six tools or sets of tools which he received from his father, including multiple power saws, drills, wrecking and extension bars, a tool cart and chest, an air compressor and assorted components. See id. at 460-77. He testified that most of the tools were given to him at one time in a large tool box. He also identified fifteen items or sets which he purchased himself, and indicated he could not remember whether he obtained one other item from his father. Toward the end of the examination, Mr. Wagnon testified he did not know his father's address and that he would not give State Farm his father's phone number, even after being reminded that his claim could be denied for failure to give material information. Although Mr. Wagnon later made several changes to his sworn testimony, he did not change his statements that most of the tools were given to him by his father.

On August 17, 1992, Mr. Wagnon's father, Olen Wagnon, wrote a statement that he had given his son "some tools," including an open end wrench set and a box end wrench set. He denied giving his son a tool cart, a socket set, or an adjustable wrench set. See id., doc. 33, at 517. On October 14, 1992,

-4-

plaintiff Wagnon underwent a second examination under oath, in which he initially affirmed his earlier statements regarding the tools. State Farm then asked him if he was aware that his father had said he did not give his son the majority of the tools, and didn't know where his son had acquired them. Mr. Wagnon replied:

> I was going to, after we got done with going over all them tools, say the reason that I told you that my father gave them to me just the simple fact is that I didn't want to complicate, I couldn't remember exactly where I got them from. I went to, like, flea markets, garage sales, and acquired the tools from there, but I can't tell you where I got them from exactly.

Id., doc. 35, at 572. When State Farm asked whether Mr. Wagnon was testifying that he lied in the first examination, he replied, "Yes, you can say I lied, yes. I was just trying --- " before his sentence was interrupted by State Farm's attorney. Id. at 573.

In a subsequent deposition, Mr. Wagnon's father specifically denied giving his son more than fifty of the tools attributed to him. See Appellant's App. I, doc. 13, at 227-36, 239-44. His wife, Mr. Wagnon's stepmother, also testified that she and her husband had not given Mr. Wagnon more than a few tools in the previous nine years, and expressly denied giving him a tool chest. See id. at 281-82.

In addition to Mr. Wagnon's misstatements, State Farm knew the following information: Plaintiffs' renters' insurance policy was a new one, the loss was large, and plaintiffs were young (early twenties), with two children, working at low income jobs, with inconsistent job histories. Except for a few items, the

-5-

Wagnons were unable to produce any receipts or proof that they owned the allegedly stolen items, claiming instead that such receipts had been taken in the burglary. Plaintiffs also changed the source of the items between their first proof of loss, which stated they purchased most items at stores, and their second proof of loss, which stated they received many of the items as gifts from family members. Further, there was a "considerabl[e]" discrepancy between the dollar amounts listed by insureds for firearms, tools, and stereo equipment in their insurance application and the amounts claimed as stolen three months later. See Tr. at 58.

During a visit to plaintiffs' home several days after the burglary, State Farm's agent noticed high priority items such as a stereo and television were not taken, whereas heavier, bulkier items such as a file cabinet containing plaintiffs' receipts and some jewelry, were claimed to have been stolen. He also noted there was no electrical outlet near where the air compressor was allegedly used.

In August 1992, Mrs. Wagnon's former brother-in-law notified State Farm that plaintiffs' claim was fraudulent. He informed State Farm that the burglary had been staged by Mrs. Wagnon and her sister; that they were upset with Mr. Wagnon for getting carried away on his claim for the tools; and that they were upset by the home investigation because the agent had noticed there was no place to plug something in when inspecting the garage. He also predicted that plaintiffs

planned to set fire to their home, and, in fact, the Wagnons' home burned in December 1992.  Although trial testimony disclosed that the brother-in-law had a strong motive to retaliate against Mrs. Wagnon for her testimony against him in a sexual abuse case, the insurance company was entitled to look carefully at plaintiffs' claim in light of this reported fraud.  State Farm also knew that Mrs. Wagnon had two juvenile felony convictions for obtaining merchandise by bogus check, and one misdemeanor conviction for larceny of merchandise from a retailer.

State Farm denied plaintiffs' claim in December 1992, on the ground that both Mr. and Mrs. Wagnon misrepresented certain facts regarding the items stolen and the existence of lawsuits against Mrs. Wagnon.  On April 4, 1994, plaintiffs filed this lawsuit.  State Farm filed two summary judgment motions, the first seeking judgment on statute of limitations grounds, and the second arguing that plaintiffs' false statements voided the policy as a matter of law.  The district court denied both motions, finding the one-year property insurance statute of limitation inapplicable because plaintiffs' claim was a casualty claim, and finding material issues of fact remaining as to whether the insurance contract was voided by plaintiffs' false statements.

At trial, Mr. Wagnon testified that he must have made a mistake when he said the tools came from his father.  See Tr. I at 104.  He acknowledged, however,

that during his examination under oath he intended State Farm to believe the tools came from his father. See id. at 126. On cross-examination, Mr. Wagnon admitted one of the reasons he withheld his father's phone number was to conceal his father's whereabouts from State Farm because he knew they would find out the truth about the tools. See id. at 129-30.

After the close of evidence, the district court denied State Farm's motion for judgment as a matter of law. Thereafter, the court found in favor of plaintiffs on the breach of contract claim, concluding that although Mr. Wagnon misrepresented the source of the tools to State Farm, his misstatements did not vitiate coverage under the policy. It is unclear whether the court's conclusion rested on a finding that the misrepresentations were not material, or on a finding that they were not intentional. The court limited plaintiffs' recovery to the actual cash value of their loss, however, because they had not replaced the stolen items within a year as required by the policy. The court's judgment, entered on November 3, 1995, noted plaintiffs' entitlement to costs and attorneys fees upon timely application pursuant to Local Rules 54.1 and 54.2, which required them to file for costs and fees within fourteen days after entry of judgment.

On November 13, 1995, plaintiffs filed a motion to amend the judgment pursuant to Fed. R. Civ. P. 59(e), raising the recent decision in Coblentz v. Oklahoma Farm Bureau Mutual Insurance Co., 915 P.2d 938, 939-40 (Okla. Ct.

App. 1995), which held unconscionable a policy provision limiting insureds' recovery to actual cash value unless the property had been replaced. On November 20, 1995, seventeen days after entry of judgment, plaintiffs filed their bill of costs and motion for attorneys fees. State Farm moved to strike, claiming plaintiffs had waived their right to recovery by filing after the fourteen-day deadline.

On December 7, 1995, the court denied plaintiffs' motion to amend. On December 14, 1995, plaintiffs moved for a retroactive extension of time until November 20, 1995, for filing their bill of costs and motion for fees. The district court granted the motion and granted costs and fees, holding plaintiffs' motion to amend tolled the time in which to file their bill of cost/motion for attorneys fees until fourteen days after entry of the order disposing of the post-trial motion.

On appeal, State Farm argues that plaintiffs' cause of action should have been barred by the statute of limitations. It also argues that Mr. Wagnon's misrepresentations were material and intentional as a matter of law, vitiating coverage. Lastly, State Farm argues that costs and attorneys fees should not have been granted because plaintiffs' application was untimely. Plaintiffs argue they should have been awarded the replacement cost of the stolen items, based on the Coblentz decision.

## II. Statute of Limitations

On March 4, 1997, we certified to the Oklahoma Supreme Court the question whether plaintiffs' policy should be deemed "property" insurance, with a one-year statute of limitations, or "casualty" insurance, with a two-year statute of limitations. On December 23, 1997, the Oklahoma Supreme Court determined that plaintiffs' theft claim was subject to the two-year statute of limitations prescribed for casualty insurance, see 36 Okla. Stat. § 3617. Because plaintiffs filed their lawsuit within two years after the date of their theft loss, the district court did not err in denying State Farms' motion for summary judgment based on the statute of limitations.

## III. Materiality of Misrepresentations and Concealments

The materiality of a misrepresentation is a mixed question of law and fact that under most circumstances should be determined by the trier of fact. See Turley v. State Farm Mut. Auto. Ins. Co., 944 F.2d 669, 672 (10th Cir. 1991); Long v. Insurance Co. of N. Am., 670 F.2d 930, 934 (10th Cir. 1982). However, materiality "can be decided as a matter of law if reasonable minds could not differ on the question." Long, 670 F.2d at 934; see also Claborn v. Washington Nat'l Ins. Co., 910 P.2d 1046, 1049 (Okla. 1996) (holding court should have directed verdict in light of undisputed evidence of material misrepresentation to insurer).

-10-

Here, then, the question is whether reasonable minds could have differed as to the materiality of Mr. Wagnon's misrepresentations.

In Long, we held "a misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented." 670 F.2d at 934. Most courts have construed materiality broadly, emphasizing that the subject of the misrepresentation need not ultimately prove to be significant to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation at the time. See Fine v. Bellefonte Underwriters Ins. Co, 725 F.2d 179, 182-84 (2d Cir. 1984) (holding materiality not judged by what facts later turn out to be, but whether a false statement "concerns a subject relevant and germane to the insurer's investigation as it was then proceeding," and holding false sworn answer material if it "may be said to have been calculated either to discourage, mislead or deflect the company's investigation in any area that might seem to the company, at that time, a relevant or productive area to investigate"); Dadurian v. Underwriters at Lloyd's, London, 787 F.2d 756, 759-60 (1st Cir. 1986); Clark v. Aetna Cas. & Sur. Co., 778 F.2d 242, 246 (5th Cir. 1985); Passero v. Allstate Ins. Co., 554 N.E.2d 384, 389 (Ill. Ct. App. 1990); Longobardi v. Chubb Ins. Co., 582 A.2d 1257, 1262-63 (N.J. 1990).

Here, the facts known to State Farm were sufficient to place it on notice that the claimed loss might be fraudulent, rendering information about plaintiffs' ownership of the stolen items material to the investigation. State Farm's questions to Mr. Wagnon regarding the source of the tools were calculated to verify ownership of the allegedly stolen items, especially in the absence of any receipts, canceled checks, warranty cards, or photographs otherwise establishing ownership. Further, as the policy provided for either replacement or actual cash value of the items, State Farm was entitled to investigate the age and source of the items to determine their value when stolen. See Clark, 778 F.2d at 246 ("[S]tatements about the previous owner of property and how much consideration was paid are clearly material in a cash value policy, for these policies, dependent on market values, are necessarily concerned with recent purchases as indicative of such value.").

Several courts have held that false statements about the acquisition of insured property are material as a matter of law, when the existence of an insurable interest or ownership is at issue. In Claflin v. Commonwealth Ins. Co., 110 U.S. 81 (1884), the trial court instructed the jury that the insured's answers concerning the manner in which he paid for the insured goods was material as a matter of law. The Supreme Court affirmed, holding:

> It is quite obvious that . . . it was material to show what title and interest [insured] had at the time of the loss in the property insured.

. . . The object of . . . requiring the assured to submit himself to an examination under oath . . . was to enable the company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims. And every interrogatory that was relevant and pertinent in such an examination was material, in the sense that a true answer to it was of the substance of the obligation of the assured. A false answer as to any matter of fact material to the inquiry, would be fraudulent.

. . . .

The fact whether [insured] had an insurable interest in the merchandise covered by the policy was directly in issue between the parties. By the terms of the contract he was bound to answer truly every question put to him that was relevant to that inquiry. His answer to every question pertinent to that point was material, and made so by the contract . . . . By that contract the companies were entitled to know from him all the circumstances of his purchase of the property insured, including the amount of the price paid and in what manner payment was made; and false statements, willfully made under oath, intended to conceal the truth on these points, constituted an attempted fraud by false swearing which was a breach of the conditions of the policy, and constituted a bar to the recovery of the insurance.

Id. at 94-97; see Dadurian, 787 F.2d at 759-60 (holding material, as a matter of law, statements regarding source of funds used to purchase allegedly stolen jewelry, because they were reasonably relevant to the insurer's investigation of insured's ownership); Passero, 554 N.E.2d at 389 (holding misrepresentations regarding how much insureds paid for stereo system and who purchased certain video equipment were material as a matter of law because they called into

-13-

question insureds' ownership of the allegedly stolen items, noting that price and identity of purchaser are relevant to ownership).

Based on the case law and the facts, Mr. Wagnon's misstatements regarding the source of the tools, and his concealment of the means to verify his statements, were material as a matter of law. State Farm had every right to investigate whether plaintiffs truly owned the items they claimed were stolen, and questions regarding the source of the items were germane and relevant to this ownership inquiry. On this basis, no reasonable fact-finder could conclude Mr. Wagnon's misstatements and concealments were not material to State Farm's investigation as it was then proceeding.

We note that the district court's materiality determination may have rested, in part, on an incorrect finding that State Farm did not dispute "that the burglary occurred or take issue with any of the personalty claimed to be lost or stolen." Appellant's App. II, doc. 19, at 362. This finding is contradicted by the record. In its answer, State Farm denied that insureds suffered a theft loss, and raised the affirmative defenses that insureds misrepresented material facts concerning the subject of the insurance and their interests therein, that they committed fraud or false swearing in the presentment of their claim, and that they caused or procured the theft loss. See Appellant's App. I, doc. 2, at 7-10. In the pretrial order signed on the day of trial, State Farm identified as disputed the factual issues

-14-

whether the theft loss occurred, whether insureds procured the loss, and whether the loss encompassed all the items that insureds' claimed were stolen.  See Appellant's App. II, doc. 18, at 337-38.  At trial, claim investigator Tom Abbott testified that State Farm questioned whether Mr. Wagnon really had all the tools he reported stolen.  See Tr. I at 51.  Although it is true that State Farm did not deny coverage on this ground, relying instead on plaintiffs' misrepresentations, this does not affect the materiality inquiry, which focuses on the time the misrepresentations were made.  See, e.g., Edmiston v. Schellenger, 343 So. 2d 465, 467 (Miss. 1977) (holding insurer's failure to raise arson defense at trial did not affect materiality of misstatements when made).

## IV.  Intentional Misrepresentation

Similarly, no reasonable factfinder could question whether Mr. Wagnon's misrepresentations were made intentionally with the intent to deceive State Farm. Mr. Wagnon was the first to suggest that most of the claimed tools were given to him by his father, and, in fact, he corrected State Farm's initial assumption that Mr. Wagnon had purchased them himself.  Although Mr. Wagnon disclaimed knowing exactly which tools his father had given him, he consistently maintained his father had given him the vast majority of tools, testifying specifically that most of the tools were given at one time in a large tool chest.  In his sworn testimony, Mr. Wagnon unequivocally identified sixty-six tools or sets of tools

given to him by his father, expressing uncertainty only as to a single tool. Even if Mr. Wagnon were mistaken as to the origin of ten or twenty of the tools, it is unreasonable to believe he could have been mistaken as to more than fifty tools or sets, including such large and expensive items as a ten-drawer tool chest, a fifteen-drawer tool cart, multiple power tools, and an air compressor.

Further, Mr. Wagnon appears to have admitted that his misstatements were made knowing that they were false. During the second examination under oath, when confronted with his father's statement regarding the tools, Mr. Wagnon seems to acknowledge he knew his statements were false when made, explaining that he gave such information to make things less complicated, and conceding that he might have lied. Mr. Wagnon also admitted at trial that he concealed his father's phone number, in part, to prevent State Farm from contacting him and learning the truth about the tools.

Certain cases indicate that Mr. Wagnon's misrepresentations should be found intentional as a matter of law. For example, in <u>Tenore v. American & Foreign Insurance Co.</u>, 256 F.2d 791 (7th Cir. 1958), the court found that an incorrect new gun valuation of seventy-six guns, despite their poor condition, demonstrated intentional false swearing as a matter of law, stating

> Had [insured] valued five, ten or possibly twenty guns at an
> excessive price, and had displayed some effort to make an honest
> valuation as to the other guns, although we might disagree, we would
> feel bound by the decision on valuation made by the trier of the facts.

-16-

But here, plaintiffs gave a new-gun valuation to every one of the sixty-six Winchesters and the ten Ithacas [despite their poor condition].

Id. at 794. So too, in Lykos v. American Home Insurance Co., 609 F.2d 314, 316 (7th Cir. 1979), the court held a consistent pattern of inordinately excessive claims showed they were deliberately false as a matter of law, as no reasonable jury could find they were the product of an innocent mistake. In Dadurian, 787 F.2d at 761-62, the First Circuit reversed a jury verdict in favor of an insured, holding the weight of the evidence overwhelmingly showed the insured knew he was giving false testimony in his sworn examination. The court noted insured was the first to originate the story that his cash had come from specific bank loans, and that he had not qualified his testimony, but couched it in terms of misleading certainty.

Further, so long as Mr. Wagnon's misrepresentations were made knowingly and deliberately, the intent to deceive the insurer will be implied. See Claflin, 110 U.S. at 95 ("And if the matter were material and the statement false, to the knowledge of the party making it, and willfully made, the intention to deceive the insurer would be necessarily implied, for the law presumes every man to intend the natural consequences of his acts."); Tenore, 256 F.2d at 795 (noting intent to defraud will be inferred when false statement is knowingly made by insured with regard to a material matter); Royal Ins. Co. v. Scritchfield, 152 P. 97, 98 (Okla.

-17-

1915) (holding intent to deceive may be implied from willful making of material statement that insured knows is false).

This is true even if the misrepresentations were made for a purpose other than defrauding the insurer. See Claflin, 110 U.S. at 96-97 (holding it did not matter that insured made misstatements for a reason other than deceiving insurer, noting the fraud "is not lessened because the motive that induced it was something in addition to the possible injury to [insurers] that it might work"); Woods v. Independent Fire Ins. Co., 749 F.2d 1493, 1496 (11th Cir. 1985) (same); Longobardi, 582 A.2d at 1262 ("The insured's motive for lying . . . is irrelevant. Forfeiture does not depend on proof that an insured harbored an intent to recover proceeds to which he or she was not entitled.").

In light of our conclusion that Mr. Wagnon's misrepresentations were material and intentionally made, State Farm was entitled to declare the policy void. Therefore, the judgment in favor of plaintiffs must be reversed. Because plaintiffs are not entitled to recover on their claim, we need not determine whether the policy's replacement requirement is unconscionable. We also need not address the timeliness of plaintiffs' application for costs and fees as plaintiffs are no longer prevailing parties.

The judgment of the United States District Court for the Northern District of Oklahoma, and its order awarding costs and fees, are REVERSED.

-18-

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 24 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CHARLES WAGNON and LORALEE
WAGNON, husband and wife,

      Plaintiffs-Appellees-
      Cross-Appellants,

v.

STATE FARM FIRE AND
CASUALTY COMPANY,

      Defendant-Appellant-
      Cross-Appellee.

Nos. 96-5012, 96-5013 &
96-5213
(D.C. No. 94-C-972-B)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[**]

---

Before **TACHA**, **EBEL**, and **BRISCOE**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

      [**]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

these appeals.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  The cases are therefore ordered submitted without oral argument.

In appeal No. 96-5012, defendant-appellant State Farm Fire & Casualty Company (State Farm) appeals the district court's judgment in favor of plaintiffs-appellees Charles and Loralee Wagnon on  their breach of contract claim.  State Farm also appeals the district court's denial of its motion for summary judgment based on the statute of limitations.  In appeal No. 96-5013, plaintiffs-cross-appellants Charles and Loralee Wagnon appeal the district court's limitation of their recovery to actual cash value instead of the replacement cost of the stolen items.  In appeal No. 96-5213, defendant-appellant State Farm appeals the award of costs and attorneys fees to plaintiffs.   Because we conclude that Mr. Wagnon's misrepresentations to State Farm were material and intentional as a matter of law, voiding the insurance policy, we reverse the district court's judgment in favor of plaintiffs and the resulting award of fees and costs.

## I.  Background

On January 3, 1992, State Farm issued a one-year renters' insurance policy to plaintiffs, insuring their property against fire and other perils, including theft. The policy contained a provision voiding coverage if any insured "intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss."  Appellant's App. II, doc. 22, p. 379.

-21-

On April 4, 1992, plaintiffs' home was burglarized. On April 10, 1992, they filed a proof of loss with State Farm, claiming the loss of personal property in the amount of $21,176.84, including the loss of tools worth approximately $4,300. In the proof of loss, Mr. Wagnon made a claim for eighty-five tools or sets of tools (totaling 527 individual pieces), and indicated he had acquired sixty of these tools or sets four years earlier. Mr. Wagnon did not submit any receipts, canceled checks, or pictures to support his claim of ownership.

During State Farm's initial interview of Mr. Wagnon on April 20, 1992, he again stated that he acquired the tools approximately four years earlier, and that a "lot of em my dad and I had when I was living at home and ah I just collect em, you know, like that and then on I just kept gradually getting um." Id., doc. 25, at 391. Later, when asked whether his father bought the tools for him, Mr. Wagnon replied "Yes, ah he acquired them you know, and he had so many of them I just kind of picked and choose and he just let me take whatever . . . ." Id. at 396.

During Mr. Wagnon's first examination under oath on June 8, 1992, State Farm asked whether Mr. Wagnon purchased a ten-drawer tool chest, to which he replied, "No, my dad had it, my dad had had it, and he just gave it to me." Id., doc. 28, at 458. State Farm then asked him whether he acquired all of the tools listed on the proof of loss from his father, to which Mr. Wagnon replied, "Not all of them; I bought a few of them here and there. I can't remember exactly which

-22-

ones I bought and which ones he gave me though." Id. at 460.  Mr. Wagnon went on to identify more than sixty-six tools or sets of tools which he received from his father, including multiple power saws, drills, wrecking and extension bars, a tool cart and chest, an air compressor and assorted components.  See id. at 460-77.  He testified that most of the tools were given to him at one time in a large tool box.  He also identified fifteen items or sets which he purchased himself, and indicated he could not remember whether he obtained one other item from his father.  Toward the end of the examination, Mr. Wagnon testified he did not know his father's address and that he would not give State Farm his father's phone number, even after being reminded that his claim could be denied for failure to give material information.  Although Mr. Wagnon later made several changes to his sworn testimony, he did not change his statements that most of the tools were given to him by his father.

On August 17, 1992, Mr. Wagnon's father, Olen Wagnon, wrote a statement that he had given his son "some tools," including an open end wrench set and a box end wrench set.  He denied giving his son a tool cart, a socket set, or an adjustable wrench set.  See id., doc. 33, at 517.  On October 14, 1992, plaintiff Wagnon underwent a second examination under oath, in which he initially affirmed his earlier statements regarding the tools.  State Farm then asked

him if he was aware that his father had said he did not give his son the majority of the tools, and didn't know where his son had acquired them. Mr. Wagnon replied:

> I was going to, after we got done with going over all them tools, say the reason that I told you that my father gave them to me just the simple fact is that I didn't want to complicate, I couldn't remember exactly where I got them from. I went to, like, flea markets, garage sales, and acquired the tools from there, but I can't tell you where I got them from exactly.

Id., doc. 35, at 572. When State Farm asked whether Mr. Wagnon was testifying that he lied in the first examination, he replied, "Yes, you can say I lied, yes. I was just trying --- " before his sentence was interrupted by State Farm's attorney. Id. at 573.

In a subsequent deposition, Mr. Wagnon's father specifically denied giving his son more than fifty of the tools attributed to him. See Appellant's App. I, doc. 13, at 227-36, 239-44. His wife, Mr. Wagnon's stepmother, also testified that she and her husband had not given Mr. Wagnon more than a few tools in the previous nine years, and expressly denied giving him a tool chest. See id. at 281-82.

In addition to Mr. Wagnon's misstatements, State Farm knew the following information: Plaintiffs' renters' insurance policy was a new one, the loss was large, and plaintiffs were young (early twenties), with two children, working at low income jobs, with inconsistent job histories. Except for a few items, the Wagnons were unable to produce any receipts or proof that they owned the allegedly stolen items, claiming instead that such receipts had been taken in the

-24-

burglary. Plaintiffs also changed the source of the items between their first proof of loss, which stated they purchased most items at stores, and their second proof of loss, which stated they received many of the items as gifts from family members. Further, there was a "considerabl[e]" discrepancy between the dollar amounts listed by insureds for firearms, tools, and stereo equipment in their insurance application and the amounts claimed as stolen three months later. See Tr. at 58.

During a visit to plaintiffs' home several days after the burglary, State Farm's agent noticed high priority items such as a stereo and television were not taken, whereas heavier, bulkier items such as a file cabinet containing plaintiffs' receipts and some jewelry, were claimed to have been stolen. He also noted there was no electrical outlet near where the air compressor was allegedly used.

In August 1992, Mrs. Wagnon's former brother-in-law notified State Farm that plaintiffs' claim was fraudulent. He informed State Farm that the burglary had been staged by Mrs. Wagnon and her sister; that they were upset with Mr. Wagnon for getting carried away on his claim for the tools; and that they were upset by the home investigation because the agent had noticed there was no place to plug something in when inspecting the garage. He also predicted that plaintiffs planned to set fire to their home, and, in fact, the Wagnons' home burned in December 1992. Although trial testimony disclosed that the brother-in-law had a

strong motive to retaliate against Mrs. Wagnon for her testimony against him in a sexual abuse case, the insurance company was entitled to look carefully at plaintiffs' claim in light of this reported fraud. State Farm also knew that Mrs. Wagnon had two juvenile felony convictions for obtaining merchandise by bogus check, and one misdemeanor conviction for larceny of merchandise from a retailer.

State Farm denied plaintiffs' claim in December 1992, on the ground that both Mr. and Mrs. Wagnon misrepresented certain facts regarding the items stolen and the existence of lawsuits against Mrs. Wagnon. On April 4, 1994, plaintiffs filed this lawsuit. State Farm filed two summary judgment motions, the first seeking judgment on statute of limitations grounds, and the second arguing that plaintiffs' false statements voided the policy as a matter of law. The district court denied both motions, finding the one-year property insurance statute of limitation inapplicable because plaintiffs' claim was a casualty claim, and finding material issues of fact remaining as to whether the insurance contract was voided by plaintiffs' false statements.

At trial, Mr. Wagnon testified that he must have made a mistake when he said the tools came from his father. See Tr. I at 104. He acknowledged, however, that during his examination under oath he intended State Farm to believe the tools came from his father. See id. at 126. On cross-examination, Mr. Wagnon

-26-

admitted one of the reasons he withheld his father's phone number was to conceal his father's whereabouts from State Farm because he knew they would find out the truth about the tools.  See id. at 129-30.

After the close of evidence, the district court denied State Farm's motion for judgment as a matter of law.  Thereafter, the court found in favor of plaintiffs on the breach of contract claim, concluding that although Mr. Wagnon misrepresented the source of the tools to State Farm, his misstatements did not vitiate coverage under the policy.  It is unclear whether the court's conclusion rested on a finding that the misrepresentations were not material, or on a finding that they were not intentional.  The court limited plaintiffs' recovery to the actual cash value of their loss, however, because they had not replaced the stolen items within a year as required by the policy.  The court's judgment, entered on November 3, 1995, noted plaintiffs' entitlement to costs and attorneys fees upon timely application pursuant to Local Rules 54.1 and 54.2, which required them to file for costs and fees within fourteen days after entry of judgment.

On November 13, 1995, plaintiffs filed a motion to amend the judgment pursuant to Fed. R. Civ. P. 59(e), raising the recent decision in Coblentz v. Oklahoma Farm Bureau Mutual Insurance Co., 915 P.2d 938, 939-40 (Okla. Ct. App. 1995), which held unconscionable a policy provision limiting insureds' recovery to actual cash value unless the property had been replaced.  On

November 20, 1995, seventeen days after entry of judgment, plaintiffs filed their bill of costs and motion for attorneys fees. State Farm moved to strike, claiming plaintiffs had waived their right to recovery by filing after the fourteen-day deadline.

On December 7, 1995, the court denied plaintiffs' motion to amend. On December 14, 1995, plaintiffs moved for a retroactive extension of time until November 20, 1995, for filing their bill of costs and motion for fees. The district court granted the motion and granted costs and fees, holding plaintiffs' motion to amend tolled the time in which to file their bill of cost/motion for attorneys fees until fourteen days after entry of the order disposing of the post-trial motion.

On appeal, State Farm argues that plaintiffs' cause of action should have been barred by the statute of limitations. It also argues that Mr. Wagnon's misrepresentations were material and intentional as a matter of law, vitiating coverage. Lastly, State Farm argues that costs and attorneys fees should not have been granted because plaintiffs' application was untimely. Plaintiffs argue they should have been awarded the replacement cost of the stolen items, based on the Coblentz decision.

## II. Statute of Limitations

On March 4, 1997, we certified to the Oklahoma Supreme Court the question whether plaintiffs' policy should be deemed "property" insurance, with a

one-year statute of limitations, or "casualty" insurance, with a two-year statute of limitations. On December 23, 1997, the Oklahoma Supreme Court determined that plaintiffs' theft claim was subject to the two-year statute of limitations prescribed for casualty insurance, see 36 Okla. Stat. § 3617. Because plaintiffs filed their lawsuit within two years after the date of their theft loss, the district court did not err in denying State Farms' motion for summary judgment based on the statute of limitations.

### III. Materiality of Misrepresentations and Concealments

The materiality of a misrepresentation is a mixed question of law and fact that under most circumstances should be determined by the trier of fact. See Turley v. State Farm Mut. Auto. Ins. Co., 944 F.2d 669, 672 (10th Cir. 1991); Long v. Insurance Co. of N. Am., 670 F.2d 930, 934 (10th Cir. 1982). However, materiality "can be decided as a matter of law if reasonable minds could not differ on the question." Long, 670 F.2d at 934; see also Claborn v. Washington Nat'l Ins. Co., 910 P.2d 1046, 1049 (Okla. 1996) (holding court should have directed verdict in light of undisputed evidence of material misrepresentation to insurer). Here, then, the question is whether reasonable minds could have differed as to the materiality of Mr. Wagnon's misrepresentations.

In Long, we held "a misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach

-29-

importance to the fact misrepresented." 670 F.2d at 934. Most courts have construed materiality broadly, emphasizing that the subject of the misrepresentation need not ultimately prove to be significant to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation at the time. See Fine v. Bellefonte Underwriters Ins. Co, 725 F.2d 179, 182-84 (2d Cir. 1984) (holding materiality not judged by what facts later turn out to be, but whether a false statement "concerns a subject relevant and germane to the insurer's investigation as it was then proceeding," and holding false sworn answer material if it "may be said to have been calculated either to discourage, mislead or deflect the company's investigation in any area that might seem to the company, at that time, a relevant or productive area to investigate"); Dadurian v. Underwriters at Lloyd's, London, 787 F.2d 756, 759-60 (1st Cir. 1986); Clark v. Aetna Cas. & Sur. Co., 778 F.2d 242, 246 (5th Cir. 1985); Passero v. Allstate Ins. Co., 554 N.E.2d 384, 389 (Ill. Ct. App. 1990); Longobardi v. Chubb Ins. Co., 582 A.2d 1257, 1262-63 (N.J. 1990).

Here, the facts known to State Farm were sufficient to place it on notice that the claimed loss might be fraudulent, rendering information about plaintiffs' ownership of the stolen items material to the investigation. State Farm's questions to Mr. Wagnon regarding the source of the tools were calculated to verify ownership of the allegedly stolen items, especially in the absence of any

receipts, canceled checks, warranty cards, or photographs otherwise establishing ownership. Further, as the policy provided for either replacement or actual cash value of the items, State Farm was entitled to investigate the age and source of the items to determine their value when stolen. See Clark, 778 F.2d at 246 ("[S]tatements about the previous owner of property and how much consideration was paid are clearly material in a cash value policy, for these policies, dependent on market values, are necessarily concerned with recent purchases as indicative of such value.").

Several courts have held that false statements about the acquisition of insured property are material as a matter of law, when the existence of an insurable interest or ownership is at issue. In Claflin v. Commonwealth Ins. Co., 110 U.S. 81 (1884), the trial court instructed the jury that the insured's answers concerning the manner in which he paid for the insured goods was material as a matter of law. The Supreme Court affirmed, holding:

> It is quite obvious that . . . it was material to show what title and interest [insured] had at the time of the loss in the property insured. . . . The object of . . . requiring the assured to submit himself to an examination under oath . . . was to enable the company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims. And every interrogatory that was relevant and pertinent in such an examination was material, in the sense that a true answer to it was of the substance of the obligation of the assured. A false answer as to any matter of fact material to the inquiry, would be fraudulent.

. . . .

> The fact whether [insured] had an insurable interest in the merchandise covered by the policy was directly in issue between the parties. By the terms of the contract he was bound to answer truly every question put to him that was relevant to that inquiry. His answer to every question pertinent to that point was material, and made so by the contract . . . . By that contract the companies were entitled to know from him all the circumstances of his purchase of the property insured, including the amount of the price paid and in what manner payment was made; and false statements, willfully made under oath, intended to conceal the truth on these points, constituted an attempted fraud by false swearing which was a breach of the conditions of the policy, and constituted a bar to the recovery of the insurance.

Id. at 94-97; see Dadurian, 787 F.2d at 759-60 (holding material, as a matter of law, statements regarding source of funds used to purchase allegedly stolen jewelry, because they were reasonably relevant to the insurer's investigation of insured's ownership); Passero, 554 N.E.2d at 389 (holding misrepresentations regarding how much insureds paid for stereo system and who purchased certain video equipment were material as a matter of law because they called into question insureds' ownership of the allegedly stolen items, noting that price and identity of purchaser are relevant to ownership).

Based on the case law and the facts, Mr. Wagnon's misstatements regarding the source of the tools, and his concealment of the means to verify his statements, were material as a matter of law. State Farm had every right to investigate whether plaintiffs truly owned the items they claimed were stolen, and questions

-32-

regarding the source of the items were germane and relevant to this ownership inquiry. On this basis, no reasonable fact-finder could conclude Mr. Wagnon's misstatements and concealments were not material to State Farm's investigation as it was then proceeding.

We note that the district court's materiality determination may have rested, in part, on an incorrect finding that State Farm did not dispute "that the burglary occurred or take issue with any of the personalty claimed to be lost or stolen." Appellant's App. II, doc. 19, at 362. This finding is contradicted by the record. In its answer, State Farm denied that insureds suffered a theft loss, and raised the affirmative defenses that insureds misrepresented material facts concerning the subject of the insurance and their interests therein, that they committed fraud or false swearing in the presentment of their claim, and that they caused or procured the theft loss. See Appellant's App. I, doc. 2, at 7-10. In the pretrial order signed on the day of trial, State Farm identified as disputed the factual issues whether the theft loss occurred, whether insureds procured the loss, and whether the loss encompassed all the items that insureds' claimed were stolen. See Appellant's App. II, doc. 18, at 337-38. At trial, claim investigator Tom Abbott testified that State Farm questioned whether Mr. Wagnon really had all the tools he reported stolen. See Tr. I at 51. Although it is true that State Farm did not deny coverage on this ground, relying instead on plaintiffs' misrepresentations,

this does not affect the materiality inquiry, which focuses on the time the misrepresentations were made. See, e.g., Edmiston v. Schellenger, 343 So. 2d 465, 467 (Miss. 1977) (holding insurer's failure to raise arson defense at trial did not affect materiality of misstatements when made).

## IV. Intentional Misrepresentation

Similarly, no reasonable factfinder could question whether Mr. Wagnon's misrepresentations were made intentionally with the intent to deceive State Farm. Mr. Wagnon was the first to suggest that most of the claimed tools were given to him by his father, and, in fact, he corrected State Farm's initial assumption that Mr. Wagnon had purchased them himself. Although Mr. Wagnon disclaimed knowing exactly which tools his father had given him, he consistently maintained his father had given him the vast majority of tools, testifying specifically that most of the tools were given at one time in a large tool chest. In his sworn testimony, Mr. Wagnon unequivocally identified sixty-six tools or sets of tools given to him by his father, expressing uncertainty only as to a single tool. Even if Mr. Wagnon were mistaken as to the origin of ten or twenty of the tools, it is unreasonable to believe he could have been mistaken as to more than fifty tools or sets, including such large and expensive items as a ten-drawer tool chest, a fifteen-drawer tool cart, multiple power tools, and an air compressor.

Further, Mr. Wagnon appears to have admitted that his misstatements were made knowing that they were false. During the second examination under oath, when confronted with his father's statement regarding the tools, Mr. Wagnon seems to acknowledge he knew his statements were false when made, explaining that he gave such information to make things less complicated, and conceding that he might have lied. Mr. Wagnon also admitted at trial that he concealed his father's phone number, in part, to prevent State Farm from contacting him and learning the truth about the tools.

Certain cases indicate that Mr. Wagnon's misrepresentations should be found intentional as a matter of law. For example, in Tenore v. American & Foreign Insurance Co., 256 F.2d 791 (7th Cir. 1958), the court found that an incorrect new gun valuation of seventy-six guns, despite their poor condition, demonstrated intentional false swearing as a matter of law, stating

> Had [insured] valued five, ten or possibly twenty guns at an excessive price, and had displayed some effort to make an honest valuation as to the other guns, although we might disagree, we would feel bound by the decision on valuation made by the trier of the facts. But here, plaintiffs gave a new-gun valuation to every one of the sixty-six Winchesters and the ten Ithacas [despite their poor condition].

Id. at 794. So too, in Lykos v. American Home Insurance Co., 609 F.2d 314, 316 (7th Cir. 1979), the court held a consistent pattern of inordinately excessive claims showed they were deliberately false as a matter of law, as no reasonable

-35-

jury could find they were the product of an innocent mistake. In <u>Dadurian</u>, 787 F.2d at 761-62, the First Circuit reversed a jury verdict in favor of an insured, holding the weight of the evidence overwhelmingly showed the insured knew he was giving false testimony in his sworn examination. The court noted insured was the first to originate the story that his cash had come from specific bank loans, and that he had not qualified his testimony, but couched it in terms of misleading certainty.

Further, so long as Mr. Wagnon's misrepresentations were made knowingly and deliberately, the intent to deceive the insurer will be implied. See <u>Claflin</u>, 110 U.S. at 95 ("And if the matter were material and the statement false, to the knowledge of the party making it, and willfully made, the intention to deceive the insurer would be necessarily implied, for the law presumes every man to intend the natural consequences of his acts."); <u>Tenore</u>, 256 F.2d at 795 (noting intent to defraud will be inferred when false statement is knowingly made by insured with regard to a material matter); <u>Royal Ins. Co. v. Scritchfield</u>, 152 P. 97, 98 (Okla. 1915) (holding intent to deceive may be implied from willful making of material statement that insured knows is false).

This is true even if the misrepresentations were made for a purpose other than defrauding the insurer. See <u>Claflin</u>, 110 U.S. at 96-97 (holding it did not matter that insured made misstatements for a reason other than deceiving insurer,

noting the fraud "is not lessened because the motive that induced it was something in addition to the possible injury to [insurers] that it might work"); Woods v. Independent Fire Ins. Co., 749 F.2d 1493, 1496 (11th Cir. 1985) (same); Longobardi, 582 A.2d at 1262 ("The insured's motive for lying . . . is irrelevant.  Forfeiture does not depend on proof that an insured harbored an intent to recover proceeds to which he or she was not entitled.").

In light of our conclusion that Mr. Wagnon's misrepresentations were material and intentionally made, State Farm was entitled to declare the policy void.  Therefore, the judgment in favor of plaintiffs must be reversed.  Because plaintiffs are not entitled to recover on their claim, we need not determine whether the policy's replacement requirement is unconscionable.  We also need not address the timeliness of plaintiffs' application for costs and fees as plaintiffs are no longer prevailing parties.

The judgment of the United States District Court for the Northern District of Oklahoma, and its order awarding costs and fees, are REVERSED.

Entered for the Court

David Ebel
Circuit Judge

-37-