**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**August 15, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

PERLA OLAVE; JAMIE DARCI
OLAVE-HERNANDEZ,

    Plaintiffs - Appellants,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY, S.I.,

    Defendant - Appellee.

No. 23-1337
(D.C. No. 1:21-CV-02908-CMA-MDB)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **EID**, and **FEDERICO**, Circuit Judges.
_____

Perla Olave owned a house in Thornton, Colorado, that was insured by

American Family Mutual Insurance Company, S.I.  Starting in late 2017, Ms. Olave

began spending a majority of her time in Missouri, and starting in March 2018, she

allowed the family of her brother, Jamie Darci Olave-Hernandez, to live in the

Thornton house.  In September 2020, the house was damaged by fire.  Ms. Olave had

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

last stayed there in December 2019, and she had not spent a day in Colorado in 2020. American Family denied Ms. Olave's and Mr. Olave-Hernandez's claims under the insurance policy on the ground that Ms. Olave did not reside in the Thornton house at the time of the fire and had not complied with the policy's requirement to notify American Family of her change in residence.

Ms. Olave and Mr. Olave-Hernandez (collectively, the Appellants) challenged American Family's decision in court, and the district court granted summary judgment to American Family. The Appellants appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

*The Policy*. In December 2016, Ms. Olave applied for insurance coverage from American Family for the Thornton house (the Property). She represented in her application that she and her child would be the only residents of the Property, it would be her primary residence, and it would be owner-occupied. American Family issued a homeowners' policy that was up for renewal in December each year. As relevant here, American Family renewed the policy in December 2019 (the Policy).

*Applicable Policy Provisions*. The Policy's Declarations identified Ms. Olave as the named insured and the Property as a "Primary Residence," Aplt. App. Vol. 1 at 76. As the named insured, Ms. Olave was the "you" and "your" referred to in the Policy. *See id.* at 94 ("**You** and **your** mean a named **insured** shown in the **Declarations** . . . ."). The Policy defined "insured" as "(1) **you**; or (2) a **household** member who is . . . a **relative**," with "household" being "the persons who are

2

residents of **your** housing unit," which "is where **you** reside on the **residence premises**." *Id.* at 95. It defined the "insured location" as "the **residence premises**," *id.*, and the "residence premises" as "the . . . one family dwelling **you** own and **you** reside in . . . that is shown as the **residence premises** in the **Declarations**," *id.* at 96.

The Policy required that Ms. Olave notify American Family "in writing within 30 days from the date any change in ownership, occupancy, or risk first begins." *Id.* at 107. "This includes but is not limited to the **residence premises** being: a. used for any other purpose than **your** residence; b. leased or rented to others; c. the subject of any foreclosure process; or d. **uninhabited**." *Id.* The Policy defined "uninhabited" as "**you** do not reside at, have moved from, or vacated **your** dwelling on the **residence premises**. This definition does not change regardless of the presence of any personal property that may be on the residence premises." *Id.* at 96. But "[**u**]**ninhabited** does not mean those instances in which . . . **you** are temporarily residing away from **your** dwelling on the residence premises due to: (1) work related travel; (2) a vacation; or (3) use of a seasonal home." *Id.* at 96-97.

The Summary of Coverage notified Ms. Olave that American Family could cancel or non-renew the Policy in certain circumstances, including "[a] substantial change in the use or occupancy of the premises" or "[k]nowingly making a false statement or material misrepresentation regarding a claim." *Id.* at 85, 91. Moreover, the Policy contained a "Concealment Or Fraud" provision stating coverage would not be "provided for any **insured** if, before or after a loss, any **insured** has: (1) concealed or misrepresented any material fact or circumstance; (2) presented any

3

altered or falsified document or receipt; (3) engaged in fraudulent conduct; or (4) made false statements; relating to this insurance or any claim under this policy." *Id.* at 117.

*Change in Occupancy*. At the end of 2017, Ms. Olave began spending time in Missouri, where her boyfriend lived. In January 2018, she enrolled her child in school in Missouri and obtained a business license there. At that point, the Property was vacant. In March 2018, Mr. Olave-Hernandez moved in, and a few months later he was joined by his wife and children. Ms. Olave traveled to Colorado from Missouri for unspecified periods in 2018 and 2019.

*Ms. Olave's Representations Upon Renewal in 2019*. When the Policy was up for renewal in December 2019, Ms. Olave told her insurance agent that her mailing address had changed to Missouri, but that she was still living at the Property and was going back and forth to Missouri for work. She also stated that her brother was living with her at the Property, so it was not vacant when she was gone. The agent discussed a businessowners' policy and e-mailed one to Ms. Olave, but ultimately the agent renewed the Policy.

*The Claim and Investigation*. The Property was damaged in an electrical fire on September 15, 2020. Ms. Olave was in Missouri. The Appellants made a claim under the Policy, and American Family began an investigation. An adjuster visited the Property, photographing a FOR RENT sign in the garage and family photos that did not include Ms. Olave. An Internet search of Ms. Olave revealed her Missouri business.

4

On October 5, 2020, American Family sent Ms. Olave a reservation of rights letter, advising coverage under the Policy was in question. Pointing out the definitions of "residence premises" and the provisions regarding fraudulent conduct, it advised it would proceed with its investigation.

Ms. Olave authorized a public adjuster, Peter Ridulfo, to act as her agent with regard to her claim. Mr. Ridulfo represented to American Family that at the time of the fire, there were four adults and four children living at the Property. He later informed American Family that Ms. Olave owned everything at the Property, aside from some clothes belonging to Mr. Olave-Hernandez.

As part of the investigation, American Family took Ms. Olave's recorded statement on November 4, 2020. Ms. Olave said she went back and forth between Missouri and Colorado for work. Describing her Missouri business as a one-woman, year-round operation, she stated she also taught classes in Colorado (one-on-one, in clients' homes) on request. She estimated in 2018 and 2019, she spent a majority of her time in Missouri—approximately 57% of her time in 2018 and 65-70% in 2019. The last time she had stayed at the Property was some weeks in December 2019; the time before that was in August 2019. But due to the COVID-19 pandemic, she had not spent a single day in Colorado in 2020. She also stated she had a Missouri driver's license, and her Colorado driver's license had expired in 2018.

*American Family Denied Coverage*. In January 2021, American Family denied coverage under the Policy, stating it had determined Ms. Olave did not reside at the Property. Therefore, the Property did not meet the Policy's definition of

"insured location" or "residence premises" and the occupants of the Property did not qualify as "insureds." After a protest by Ms. Olave's counsel that she was only temporarily living away from the Property, American Family reiterated its denial of coverage in February 2021. It highlighted several pieces of evidence that Ms. Olave resided in Missouri, stating:

- Ms. Olave's Colorado vehicle registration for a 2018 Jeep Grand Cherokee expired in 2018;

- Social media posts by Ms. Olave since 2018 are from Missouri;

- Ms. Olave is the owner of Frida Microblading Studio located in [the city of] Town and Country Missouri and Ms. Olave maintains her tattoo license with the State of Missouri;

- A blog focused on Ms. Olave's business states that Ms. Olave "move[d] to the St. Louis area . . . to ensure that her daughter grew up around extended family;"

- And, most notable, Ms. Olave registered to vote in Missouri beginning on 2/01/2018 and continuing through the date of loss.

Aplt. App. Vol. 1 at 277.

*The Appellants Filed Suit*. The Appellants brought suit in Colorado state court, each alleging three claims: (1) breach of insurance contract, (2) common law bad faith breach of insurance contract, and (3) unreasonable delay and denial of insurance benefits under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116. Relying on diversity jurisdiction, American Family removed the suit to federal court.

*American Family Uncovered Additional Information During Discovery*. Ms. Olave testified in her deposition that in November 2017, she moved in with her boyfriend in Missouri. Between November 2017 and March 2018, the Property was

vacant, although she traveled back to Colorado to check on it. She also testified that she last worked in Colorado in 2017, and that she did not travel back and forth between Colorado and Missouri for work in either 2018 or 2019. In answers to interrogatories, she stated that she did not travel to Colorado between December 2019 and May 2021. In response to requests for admissions, she admitted that she had registered her car, opened her business, and enrolled her child in school in Missouri, all before the fire.

Mr. Olave-Hernandez testified in his deposition that he owned several items of personal property at the Property, including office furniture, exercise equipment, a television, and a dresser.

*Motion for Summary Judgment*. American Family moved for summary judgment, arguing that the Appellants' concealment or misrepresentation of material facts voided coverage under the Policy. The district court disposed of American Family's motion in two orders.

*First Summary Judgment Order*. In its first summary judgment order, the court began by addressing the issue of Ms. Olave's residency at the Property. Finding that Colorado courts have not considered the definition of "reside" in the context of a homeowners' insurance policy, it looked to guidance from Colorado cases considering residency in the context of automobile insurance policies. It identified four relevant factors: "'[1] the subjective or declared intent of the individual, [2] the formality or informality of the relationship between the individual and members of the household, [3] the existence of another place of lodging, and

7

[4] the relative permanence or transient nature of the individual's residence in the household.'" Aplt. App. Vol. 2 at 34 (quoting *Grippin v. State Farm Mut. Auto. Ins. Co.*, 409 P.3d 529, 532 (Colo. App. 2016)) (bracketed numerals in original). These factors are called the "*Boatwright* factors" because they initially were set forth in *Iowa National Mutual Insurance Co. v. Boatwright*, 516 P.2d 439, 440 (Colo. App. 1973).

The district court held that the first *Boatwright* factor was at most neutral and the other *Boatwright* factors weighed against Ms. Olave, with the third factor weighing heavily against her. It thus determined that no reasonable juror could find that Ms. Olave resided at the Property at the time of the fire. As a result, the court held that Ms. Olave breached her obligation under the Policy to notify American Family of her change of residence within 30 days.

Next, the district court considered whether Ms. Olave's breach voided the Policy in its entirety. It held that, to demonstrate the Policy was void, American Family had to establish three elements: "'(1) the insured misrepresented or omitted a fact; (2) the misrepresentations or omissions were material; and (3) the insured intended to deceive the insurer.'" Aplt. App. Vol. 2 at 38 (quoting *Wheatridge Office, LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1202 (D. Colo. 2022)). It concluded that there were no disputed material facts regarding the elements of misrepresentation and materiality, but that neither party had sufficiently briefed Ms. Olave's intent. It therefore directed the parties to file supplemental briefs and reserved ruling on the contract claims.

8

The district court then moved on to the bad faith and statutory delay/denial claims. Although it did not identify any Colorado cases involving an insured's failure to notify, it found persuasive similar case law (involving lack of cooperation) in which the court held that because the insured's failure to fulfill their duties vitiated coverage under the policy, the insured's bad faith claim failed as a matter of law. *See Polland v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-01416-KLM, 2019 WL 10258801, at *7 (D. Colo. Oct. 25, 2019) (unpublished). Finding "there is no genuine dispute of material fact that Ms. Olave breached her obligations under the Policy to notify American Family that she no longer resided at the Property," the district court held, "Because Ms. Olave's breach impaired her rights to recover under the Policy, American Family's conduct was reasonable." Aplt. App. Vol. 2 at 41. It therefore granted summary judgment to American Family on the bad faith and statutory delay/denial claims.

*Second Summary Judgment Order*. After the parties submitted their supplemental briefing regarding the intent element, the district court returned to the contract claims. It concluded that "Ms. Olave knowingly and deliberately made material misrepresentations regarding her residence at the Property and her work in Colorado," and "[b]ased on these knowing and deliberate misrepresentations regarding her work and residence, Ms. Olave's intent to deceive American Family is implied." *Id.* at 73. It therefore held that coverage under the Policy was void. The district court rejected the argument that American Family waived its right to void the policy by continuing to insure the Property even after learning about Ms. Olave's

9

Missouri change-of-address during the 2019 renewal process. It granted summary judgment to American Family on the contract claims and entered final judgment in favor of American Family.

*Fed. R. Civ. P. 59(e) Motion*. The Appellants timely filed a Fed. R. Civ. P. 59(e) motion to alter or amend the judgment. They objected both to the court's decision to use the *Boatwright* factors to determine whether Ms. Olave resided at the Property and to how it evaluated the factors. They also asserted that whether Ms. Olave's statements and actions constituted misrepresentations was a question of fact for a jury and argued any misrepresentations were not material. The district court denied the motion.

The Appellants now appeal.

**DISCUSSION**

For the grant of summary judgment, "we engage in de novo review, applying the same standard for summary judgment that applied in district court. This standard requires us to vie the evidence and all reasonable inferences favorably to [the Appellants]." *Sandoval v. Unum Life Ins. Co. of Am.*, 952 F.3d 1233, 1236 (10th Cir. 2020) (citation omitted). "Summary judgment is warranted only in the absence of a 'genuine dispute as to any material fact' and the defendant['s] entitlement to 'judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "We review rulings on Rule 59(e) motions for an abuse of discretion." *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019).

In a diversity case, we "apply the law of the forum state," here Colorado. *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 930 (10th Cir. 2018) (internal quotation marks omitted). We thus "must ascertain and apply [Colorado] law with the objective that the result obtained in the federal court should be the result that would be reached in [a Colorado] court." *Id.* (internal quotation marks omitted). "Where the highest court of the forum state has not yet ruled on an issue, we determine what decision the state court would make if faced with the same facts and issue by considering lower state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority." *Id.* at 930-31 (brackets and internal quotation marks omitted).

## I.    The court did not err in concluding "reside" is not ambiguous.

The Appellants argue that the term "reside" was ambiguous. Asserting that "Plaintiff Perla has never wavered from the contention that the Property is her home and permanent residence," Aplt. Opening Br. at 17, they point out that under Colorado law, an ambiguous term in an insurance policy must be construed in favor of the policyholder. *See, e.g.*, *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 820 (Colo. 2004) ("Where terms in an insurance policy are ambiguous, we construe the terms against the drafter and in favor of providing coverage to the insured.").

But "[t]he prerequisite to application of this rule is a determination that the policy is ambiguous." *Pompa v. Am. Fam. Mut. Ins. Co.*, 520 F.3d 1139, 1142-43 (10th Cir. 2008) (citation omitted). "'Terms used in a contract are ambiguous when

11

they are susceptible to more than one reasonable interpretation.'" *Id.* (quoting *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1091 (Colo. 1991)). "To decide whether a contract is ambiguous, a court may consider extrinsic evidence regarding the meaning of the written terms, including evidence of local usage and of the circumstances surrounding the making of the contract." *Pub. Serv. Co. of Colo. v. Meadow Island Ditch Co. No. 2*, 132 P.3d 333, 339 (Colo. 2006). But "[t]he court may not . . . consider the parties' extrinsic expressions of intent." *Id.*

The district court noted that under Colorado law, "'[r]esidence . . . denotes a place where a person dwells. It simply requires bodily presence as an inhabitant in a given place.'" Aplt. App. Vol. 2 at 34 (quoting *Potter v. State Farm Mut. Auto. Ins. Co.*, 996 P.2d 781, 783 (Colo. App. 2000)) (further quotation marks omitted). It held the Appellants failed to establish the term "reside" is ambiguous because they failed to provide the court with more than one reasonable interpretation of the term. The court held the Appellants' position—that Ms. Olave's residence was whatever location she, in her opinion, considered to be her residence—was not reasonable.

We agree with the district court. Ms. Olave's focus on her intent, without regard to her physical presence, is not a reasonable interpretation of "reside" under Colorado law. As the district court recognized, in Colorado, residency carries a connotation of some amount of physical presence. And the Colorado Supreme Court long ago held that a lack of bodily presence trumps intent when it comes to establishing residency in the state. In *Lyons v. Egan*, 132 P.2d 794 (Colo. 1942), it considered a claim for a statutory allowance that required a decedent's children to be

12

"residing" in Colorado at the time of their father's death. *Id.* at 796. The children's parents were divorced, and they had lived with their mother in Florida for more than a decade before their father died in Colorado. *See id.* at 796-97. The mother testified that "it was not her intention nor that of her former husband, Lyons, that their children remain away from Colorado permanently, but it was her intention and the expressed intention of Lyons that said children would return to Colorado and there continue their permanent residence." *Id.* at 796. In addition, the children testified "that their intention was to consider their home and residence as being in Colorado." *Id.* But the Colorado Supreme Court held "the minors did not reside in Colorado at the time of the death of their father," stating:

> The statement of intention by the mother and the inadmissible statements of the minors that they would, as soon as financial conditions made it possible for them to do so, return or be returned to Colorado, are insufficient to establish Colorado as either their residence or domicile. . . . Where . . . the declarations of a party as to his intent are inconsistent with his acts, his conduct is of greater evidential value than his declarations. . . . Intention alone is insufficient to change one's residence or domicile. A naked declaration of intention . . . would not of itself be conclusive.

*Id.* at 798.

Ms. Olave claims residency at the Property at the time of the fire based on her intent to return at some point after the COVID-19 pandemic. Under *Lyons*, however, a party cannot establish Colorado residency based only on intention. Thus, the district court did not err in concluding Ms. Olave's interpretation of "reside" is unreasonable under Colorado law. It follows that the district court was not required to conclude "reside" was ambiguous. *See Pub. Serv. Co. of Colo. v. Wallis & Cos.*,

13

986 P.2d 924, 939 (Colo. 1999) ("[W]e are unable to pursue either of these avenues of interpretation because we find the construction of the policies urged by [the petitioner] to be unreasonable.").

The Appellants highlight the Policy's failure to define "reside" and suggest "that the parties were operating with substantially different interpretations of that term." Aplt. Opening Br. at 18. But "a term is not ambiguous merely because it is undefined within the policy if its meaning can be ascertained by looking at the definitions generally accepted by the courts, the industry, and authoritative secondary sources." *Travelers Indem. Co. v. Howard Elec. Co.*, 879 P.2d 431, 434 (Colo. App. 1994). As discussed, the meaning of "reside" can be ascertained from Colorado law. Further, "[t]he mere fact that the parties may have different opinions regarding the interpretation of the contract does not itself create an ambiguity in the contract." *Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 377 (Colo. 2000).

The Appellants also note that the Policy contemplates the possibility of more than one residence. This is consistent with Colorado law, *see Grippin*, 409 P.3d at 533 ("Colorado law contemplates that a person can 'reside' in more than one place."), as the district court explicitly recognized. The possibility of multiple residences, however, does not eliminate the requirement of some physical presence to establish residency in Colorado.

The Appellants further suggest the district court erred in applying the *Boatwright* factors in this context. We disagree. Much of the Appellants' argument

14

on this point relies on their contention that "reside" is ambiguous, which we already have rejected. And the district court's task was to predict how the Colorado Supreme Court would rule if faced with this case. Because the *Boatwright* factors are an authoritative means of ascertaining whether a person "resides" at a location for purposes of insurance coverage under Colorado law, we see no error in consulting them for guidance.

Finally, the Appellants contend that "[w]hile the Court here noted all factors should be considered, it neglected to take into account whether all parties intended to extend coverage to the Property." Aplt. Opening Br. at 19. American Family asserts that this argument is new on appeal, and the Appellants' reply brief does not identify where they made the argument in the district court. We do not search the record even for a pro se party, much less for a represented party. *See Kincaid v. Unified Sch. Dist. No. 500*, 94 F.4th 936, 947 (10th Cir. 2024). Because the Appellants do not show that they preserved the argument in the district court and do not argue for plain error, we decline to address this argument. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011).

## II. The court did not err in holding the misrepresentations were material.

The Appellants argue that, even if the term "reside" is not ambiguous, the district court still erred in determining the misrepresentations were material as a matter of law. First, citing *Wagnon v. State Farm Fire & Casualty Co.*, 146 F.3d 764, 768 (10th Cir. 1998), the Appellants assert materiality should be determined by the trier of fact. Second, again relying on *Wagnon*, the Appellants argue that the

15

facts identified by the district court were not sufficiently material to void coverage under the Policy.

Notably, *Wagnon* arose out of Oklahoma, not Colorado. Yet the district court relied on it in this case involving Colorado law, and on appeal, the Appellants do not challenge that reliance. To the contrary, the Appellants cite it in support of their arguments. They therefore have waived any objection to applying *Wagnon* in this case. *See Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) ("Issues not raised in the opening brief are deemed abandoned or waived." (internal quotation marks omitted)).

Regarding the Appellants' first point, *Wagnon* holds "[t]he materiality of a misrepresentation is a mixed question of law and fact that under most circumstances should be determined by the trier of fact." 146 F.3d at 768. But it also recognizes that "materiality can be decided as a matter of law if reasonable minds could not differ on the question." *Id.* (internal quotation marks omitted). Here, we cannot conclude that reasonable minds could differ. The district court was not required to submit the question of materiality to the jury.

Moving on to the second point, the Appellants argue that the district court placed unwarranted emphasis on two misrepresentations: (1) Mr. Ridulfo's assertion that Ms. Olave owned everything on the Property but her brother's clothes, and (2) Ms. Olave's assertion that the purpose of her trips was for business. They assert that neither the district court nor American Family "elaborate on why or how either of these misrepresentations would affect the insurer's course of conduct as is required

16

for misstatements to be material," Aplt. Opening Br. at 24, and that these misrepresentations constitute "merely an oversight of a handful of furniture and personal possessions and a discrepancy as to the reason for travel," *id.* at 25.

In the context of an investigation, "a misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented." *Wagnon*, 146 F.3d at 768 (internal quotation marks omitted). "[T]he subject of the misrepresentation need not ultimately prove to be significant to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation at the time." *Id.*

The Appellants' attempts to minimize the misrepresentations do not establish the district court erred in concluding a reasonable insurance company would attach importance to Ms. Olave's statements in investigating whether coverage applied. No reasonable juror could conclude that an insurance company would not attach importance to the alleged reason for Ms. Olave's travel where the Policy specifies a "work related travel" exception to the requirement to report the Property as "uninhabited." Aplt. App. Vol. 1 at 96-97. Likewise, no reasonable juror could conclude that an insurance company would not attach importance to a statement of ownership of items at the Property in determining whether Ms. Olave truly resided at the Property, as she claimed.

**CONCLUSION**

We affirm the district court's judgment.

Entered for the Court

Per Curiam